00613IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA BEILSTEIN, | ) )   Case No. 1:19-cv-7175 |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) ) |
| Defendants. | ) ) |

# COMPLAINT

Now comes the Plaintiff, MELISSA BEILSTEIN, by her attorney MICHAEL BARTOLIC of THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, she states:

## NATURE OF THE ACTION

1. This case is about a long-term disability insurer who did not dispute the symptoms Plaintiff experienced were disabling in finding her disabled, but when it learned she still experiences the symptoms from an illness other than the one it thought caused the symptoms, and was surgically addressed, began disregarding every piece of evidence that she still experiences the symptoms, including a functional capacity evaluation, neuropsychological testing, and treating physician opinions, all of which corroborate each other.

2. Defendant disregarded all that evidence because it did not align with Defendant's conclusion that Plaintiff should no longer experience the symptoms, or that the evidence post-dated the date Defendant terminated benefits without any suggestion of an intervening event that

would cause a meaningful distinction (which courts unanimously declare a frivolous basis to disregard evidence).

3. The meritless nature of Defendant's positions is only exacerbated by the fact that Plaintiff only must be disabled from her own occupation to qualify for payment from Defendant, and yet the Social Security Administration, reviewing the same evidence as Defendant, found her disabled from performing any kind of work. The only way to reconcile the evidence in the case with Defendant's position is that Defendant insists on proof beyond any doubt, reasonable or not, to pay a claim, where the entire judicial system, on this claim and in Social Security matters, requires only a preponderance of the evidence. It is the only way to explain why Defendant and its in-house doctors stand all alone in insisting Plaintiff is not disabled at all.

4. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking long-term disability insurance benefits due pursuant to the terms of an employee benefit plan and group insurance policy, and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## THE PARTIES

5. Plaintiff, MELISSA BEILSTEIN (hereinafter "Beilstein" or "Plaintiff"), is a former employee of Blue Cross Blue Shield Association (hereinafter "BCBS"). BCBS sponsors an employee welfare benefit plan, as that term is defined by 29 U.S.C. § 1002(1), which provides long-term disability ("LTD") benefits. Incident to her employment with BCBS, Beilstein received coverage under the plan as a participant, as that term is defined by 29 U.S.C. § 1002(7).

6. Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA (hereinafter "Unum"), insures the plan through group insurance policy number 702650 994 (attached hereto as Exhibit 1). Unum is the claims review fiduciary of the plan and insurance policy, meaning it

2

is responsible for determining whether any benefits under the policy are due, and is the entity responsible for paying any benefits due. Unum reviewed Plaintiff's benefit claims and appeals of its benefits denials in this case.

7. The insurance policy at issue was issued to BCBS in Illinois on September 1, 2015, triggering the Illinois ban on discretionary clauses found in 50 Ill. Adm. Code § 2001.3, which applies to such policies issued or delivered in Illinois after July 1, 2005. Any purported conferral of discretionary authority to Unum is thus null and void.

## JURISDICTION AND VENUE

8. Jurisdiction of the Court is based upon ERISA, and in particular, 29 U.S.C. § 1132(e)(1) and 1132(f). Those provisions give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a). In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States, and 28 U.S.C. § 1367.

9. The ERISA venue statute makes venue proper in any judicial district in which the breach occurred, the plan is administered, or where any defendant can be found. At all relevant times, Plaintiff lived within the Northern District of Illinois, making this the situs of the breach. In addition, the plan is administered in the Northern District of Illinois. Venue is thus proper in this district. 29 U.S.C. § 1132(e)(2).

10. ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative appeals of benefit denials, and those avenues of appeals have been properly exhausted.

## STATEMENT OF FACTS

11. Beilstein is a participant under the plan. As a participant, she was entitled to benefits set forth in the governing insurance policy if she met the definition of Disabled.

3

12. The policy defines disability as:

You are disabled when you Unum determines that:

[1] You are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury**; and
[2] You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.

(Ex. 1).

13. "**Regular Occupation** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (Ex. 1).

14. "**Material and Substantial Duties** means duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (Ex. 1).

15. Beilstein worked as a senior consultant in the Commercial Markets division for BCBS since 2003.

16. In January 2018, Dr. Julian Dixon conducted a physical examination on Beilstein and documented symptoms of dizziness/vertigo, night sweats, anxiety, poor concentration, coordination problems, and persistent runny nose. Shortly thereafter, Dr. Dixon diagnosed Beilstein with cerebrospinal fluid leak ("CSF") which necessitated surgical repair of the leak.

17. Beilstein stopped working at BCBS on February 11, 2018 due to those symptoms of CSF, and her headaches, back pain, and joint pain.

4

18. Beilstein applied for and the Unum approved short-term disability benefits beginning February 12, 2018, determining that the symptoms she experienced rendered her disabled.

19. The policy's elimination period is 180 days (the time period one must be continuously disabled before LTD benefits become payable), making LTD benefits payable on August 10, 2018.

20. On February 12, 2018, Beilstein underwent a successful cerebrospinal fluid leak repair. But following the procedure, Beilstein continued experiencing her symptoms, including persistent head pressure and headaches, back pain, sensitivity to light and sound, light headedness and dizziness.

21. Beilstein also experienced notable weakness in her left leg and underwent an MRI of the lumbar spine which revealed bilateral spondylosis, mild bilateral neural foraminal narrowing, and early facet changes at L4-L5.

22. In March 2018, Beilstein continued to complain of headaches, memory loss, back pain, and leg weakness. One of Beilstein's treating physicians, Dr. Scuit Wong, opined that she cannot sit/stand more than 30 minutes at one time.

23. Beilstein underwent a valid Neuropyschological Examination by Dr. Frederick Bylsma, who evaluated her on April 10th, May 12th, and June 4th, 2018. Dr. Bylsma concluded that based on the test results, Beilstein could not cognitively function well enough in certain categories to work in competitive employment.

24. Dr. Dixon's physical examination on June 18, 2019 was positive for back pain, dizziness and vertigo, sleep disturbance, poor concentration, memory loss, and more.

25.     In July 2018, Beilstein visited Dr. Kenneth Holmes at Edward Medical Group who assessed chronic headaches, fatigue, and noted that because of the hyperlaxity of her joints there is a possibility of Ehlers-Danlos Syndrome.

26.     On August 3, 2018, Beilstein underwent a spinal puncture under fluoroscopy guidance. Dr. Howard Bartman, board certified in Internal Medicine, noted five days later that Beilstein may have fibromyalgia.

27.     Dr. Bartman advised Unum he would not release Beilstein to work until she completed workup with her neuro-opthamologist regarding her dizziness and vertigo, as she still experienced her symptoms notwithstanding the procedure to address the CSF leak.

28.     Beilstein's rheumatologist, Dr. David Mael, advised on August 20, 2018 that based on his current examination, it did not appear Beilstein was able to work.

29.     On August 23, 2018, Unum denied Beilstein's LTD claim because it concluded her symptoms should have already resolved due to the CSF leak repair surgery, and there was no other definitive diagnosis explaining why Beilstein experienced the symptoms. No clause in the policy's conditions of eligibility for benefits, though, requires a definitive diagnosis to be disabled. It merely requires an illness, of known or unknown etiology, causing disabling symptoms.

30.     Prior to submitting her appeal of the erroneous adverse benefit determination, Beilstein continued to seek medical treatment as her symptoms continued to affect her. She visited Duke University Health in North Carolina on October 16, 2018, visited Medical Genetics and Neurodevelopment Center in Indianapolis, Indiana on October 31, 2018, and tested her physical capability with a comprehensive functional capacity evaluation ("FCE") on January 15, 2019.

31. Duke University medical physicians indicated that Beilstein's most likely diagnosis is idiopathic intracranial hypertension and Ehlers-Danlos syndrome, given her hypermobility.

32. On October 31, 2018, Dr. Bradley Tinkle, who specializes in hypermobility syndromes, diagnosed Beilstein with Ehlers-Danlos syndrome, type 3, multiple joint pain, and postural dizziness.

33. Regarding the FCE, the therapist performing the FCE documented the results were valid and Beilstein demonstrated consistent effort throughout the testing.

34. Specifically, the FCE results revealed that Beilstein was unable to sit or stand for 30 minutes on a continuous basis and had to change positions every 20 minutes, and had severe limitations in climbing, bending, and squatting. He further concluded that Beilstein was "unfit to retain employment even under sedentary restrictions."

35. On February 21, 2019, Plaintiff submitted an appeal pursuant to the policy's review procedures, which included the aforementioned pieces of evidence proving Beilstein could not perform any work and continuously satisfied the definition of disability and all policy requirements to receive benefits.

36. On March 25, 2019, Unum sent a letter to Beilstein indicating that Unum had retained medical consultants to review the file and provide opinions on Beilstein's disability status. The medical consultants, however, were in-house physicians employed by Unum and only performed file reviews. They never spoke to Beilstein or examined her. The letter afforded Beilstein an opportunity to respond to the consultants' opinions prior to making an official denial of LTD benefits.

37. Unum's employed physicians disregarded the evidence submitted with the appeal on the grounds that they could not deem the tests or opinions reliable as they were not consistent with Unum's view of medical treatment records as showing Beilstein is not disabled.

38. Their other ground to dismiss the evidence was that the evidence was not generated prior to Unum denying the claim, while they offer no explanation (such as an intervening injury) that would explain the limited utility of the information.

39. Upon information and belief, Unum routinely in the course of reviewing claims requests from claimant's medical evidence and tests that post-date an eligibility date in question. In particular, Unum will rely on such evidence when it can support denying a claim, but will disregard it when it supports why a claimant is disabled.

40. In response, on April 8, 2019, Beilstein submitted updated medical records from Rush University and two medical assessment forms from her treating physicians: Drs. Laura Goldstein and Milena Stosic. A vocational analysis was also underway to determine if Beilstein could perform her regular occupation given her significant functional limitations, but the report was not completed until June 2019.

41. Dr. Milena Stosic stated that Beilstein exhibits chronic back pain, chronic headaches, Ehlers Danlos Syndrome, Dysautonomia, and Intracranial Hypertension. She also opined: Beilstein experiences constant symptoms which interfere with attention and concentration; Beilstein would be unable to perform routine, repetitive tasks at consistent pace, detailed or complicated tasks, strict deadlines, fast pace tasks; Beilstein could continuously sit for only 20 minutes but shift positions and lie down right after; Beilstein could only stand 5 minutes and then sit or lie down; take more than 10 unscheduled breaks of about 30 minutes; elevate legs due to pain and weakness; use a cane occasionally to help balance when

lightheadedness is pronounces; and Beilstein would be absent more than four days per month. Lastly, forcing Beilstein to maintain a job would put her in medical jeopardy.

42. Dr. Laura Goldstein opined that Beilstein's chronic symptoms from chronic back pain, chronic headaches, Ehlers Danlos Syndrome, Dysautonomia, and Intracranial Hypertension would force her to be absent from work more than four days per month. Notably, Dr. Goldstein indicated the positive clinical findings on the MRI of brain included hyperintensity of left periventricular white matter. She also indicated Beilstein experiences constant symptoms which interfere with attention and concentration and that Beilstein would be unable to perform detailed or complication tasks, fast paced tasks, and routine, repetitive tasks at a consistent pace. Dr. Goldstein stated Beilstein would need more than 10 unscheduled breaks due to fatigue, pain, and weakness, and requires cane intermittently to assist with steadiness and ensure safety, and would be absent from work more than four days per month.

43. Similar to the FCE report, Unum dismissed both medical assessment forms from Drs. Stosic and Goldstein for not being "time-relevant," while offering no explanation as to what intervening event would make them not an accurate depiction of Beilstein's functional status at the time Unum denied her claim. In fact, on April 23, 2019, Unum's claims manager noted in the claims file that "the information submitted by the attorney in response to the right to review and respond letter is not time relevant to the period in question. Therefore, no additional review of the information is needed on appeal."

44. On April 26, 2019, Unum communicated the additional medical evidence did not change its decision, but it would await the upcoming vocational evidence.

45. James Radke, MS, CRC, LCPC, CEA prepared a vocational analysis dated June 20, 2019. Mr. Radke disagreed with Unum's analysis. He concluded, "Ms. Beilstein is not

physically or cognitively capable of performing her prior position an internal consultant (auditor)."

46. He defined Beilstein's occupation as an "auditor" which requires above average general and verbal abilities, superior numerical abilities, and above average aptitude.

47. Mr. Radke had two main conclusions: (1) Beilstein is not physically capable of performing the occupation due to lack of physical endurance and need for a number of breaks and duration thereof that are not a reasonable accommodation in competitive employment; and (2) her cognitive abilities demonstrated in neuropsychological testing fall below the requirements for the type of work, which would only be exacerbated by having to change positions with a sit/stand desk as frequently as necessary, as Unum believed would cure any functional limitations. She would constantly get back off task to change positions, thereby compromising the required productivity.

48. On June 27, 2019, Unum upheld the decision to deny benefits. In responding to Mr. Radke's report, Unum concluded that the report relied on evidence after the elimination period ended which is not relevant to Beilstein's functional capacity as of August 10, 2018. Thus, Unum again erroneously dismissed key evidence on the basis that it was not time relevant.

49. On August 26, 2019, Beilstein was awarded Social Security Disability benefits from February 2, 2018. It found her disabled from performing her past work (i.e., her own occupation which is in dispute in this litigation), and from performing any substantial gainful activity. Given how young Beilstein is, the finding could not have been on the basis of medical-vocational grids, and was a direct result of the severity of Beilstein's impairments.

50. The Social Security Administration reviewed the same records as Unum did. The key difference is SSA is a neutral agency, while Unum is an insurance company disincentivized to pay claims.

51. Beilstein's counsel contacted Unum to inquire if it wished to re-open the review and take the SSA file into account. Unum's appeal specialist responded that Beilstein could submit the file for inclusion in Unum's record, but Unum would not perform another review. So Beilstein sent Unum the entire SSA file.

52. Unum's decision to deny benefit payments to Plaintiff was contrary to the terms of the policy.

53. Unum failed to provide Beilstein with a full and fair review of her claim in violation of 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1, which require Unum to consider all evidence submitted in support of a disability claim. Unum violated this requirement numerous times by dismissing evidence as "not time relevant."

54. As a result of Unum's denial of Beilstein's claim, and subsequently upholding that decision, there exists an actual case and controversy between the parties, entitling Beilstein to a declaration of rights clarifying the benefits to which she is entitled under the policy.

55. All administrative remedies and conditions precedent have been satisfied and this claim for benefits is ripe for adjudication.

WHEREFORE, Plaintiff prays from the following relief:

A. That the Court enter judgment in favor of Plaintiff and against Defendant, and award Plaintiff all past due benefits and declare her right to reinstatement of the benefits in the amount equal to the contractual amount of benefits to which she is entitled retroactively;

  B.  That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

  C.  That the Court award Plaintiff his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit;

  D.  That the Court order Beilstein be put back on claim and that upon receipt of 24 months of LTD benefits, Unum must perform its review as to whether Beilstein is entitled to benefits for being disabled from any gainful occupation; and

  E.  That the Plaintiff recovers any and all other relief to which she may be entitled.

Respectfully Submitted,

/s/ Michael Bartolic
One of the Attorneys for the Plaintiff

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
208 S. LaSalle Street, Suite 1420
Chicago, Illinois 60604
Tel: 312-635-1600
Fax: 312-635-1601
mbartolic@michaelbartolic.com